# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1378

David John Anderson, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 9, 2016**
**Affirmed**
**Cleary, Chief Judge**

Polk County District Court
File No. 60-CV-15-630

Kevin T. Duffy, Duffy Law Office, Thief River Falls, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Cleary, Chief Judge; and Smith, John, Judge.*

## S Y L L A B U S

A district court in an implied-consent proceeding lacks jurisdiction to hear an untimely petition to rescind the revocation of a driver's license, including where a driver

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

is mentally incompetent at the time of the revocation. However, in a subsequent criminal proceeding, a driver may challenge the state's use of such a revocation to enhance charges.

**O P I N I O N**

**CLEARY**, Chief Judge

Appellant David John Anderson was charged in 2006 and 2008 with misdemeanor driving while impaired (DWI) but was found mentally incompetent to stand trial for those crimes. The commissioner revoked appellant's driver's license in response to each failed sobriety test. Appellant filed a petition to rescind the revocations in 2015. He argues on appeal that the district court erred by denying this petition. Because the district court lacked jurisdiction over the untimely petition, we affirm.

**FACTS**

On December 14, 2006, appellant was charged with fourth-degree DWI. He received a 30-day driver's license revocation notice, but did not file a petition for judicial review. In 2007, his license was revoked. On March 3, 2008, appellant was charged with third-degree DWI. He received a 30-day license revocation notice, did not file a petition for judicial review, and again his license was revoked.

While these DWI charges were pending, appellant underwent a rule 20 mental evaluation. On October 24, 2008, the district court found that appellant "lack[ed] sufficient ability to consult with a reasonable degree of rational understanding" in his defense and was "mentally deficient so as to be incapable of participating in his defense." Because he was not competent to stand trial, and because both were misdemeanor charges, the 2006

2

and 2008 DWI charges were dismissed.  Minn. R. Crim. P. 20.01, subd. 6(b).  Soon after, appellant was civilly committed as mentally ill and chemically dependent.

On December 22, 2012, appellant was arrested and charged with felony DWI - refusal to submit to a chemical test, felony DWI - operating a motor vehicle under the influence of alcohol, and gross misdemeanor driving after cancellation.  Appellant claims that the state is now using the 2007 and 2008 driver's license revocations to enhance the pending DWI charges.[1]

On April 16, 2015, appellant filed a petition for judicial review of the license revocations, seeking to rescind the revocations.  The petition was filed as an implied-consent proceeding separate from the criminal proceeding.  Appellant argued that, because he was found mentally incompetent to face the 2006 and 2008 DWI charges, the related revocations should be rescinded.  The district court denied appellant's petition.  The court reasoned that the 30-day period to file for judicial review of a revocation is jurisdictional and is strictly enforced.  Appellant filed his petition years beyond this deadline, and the district court concluded that it was jurisdictionally barred from considering the petition.  This appeal followed.

## ISSUE

Did the district court err by concluding that it lacked jurisdiction to consider appellant's untimely petition to rescind the revocations of his driver's license?

---

[1] Appellant failed to cite anything in the record that establishes that the state is using the revocations to enhance the charges against him.  For the purposes of this appeal, we will assume the truth of that unsupported assertion.

**ANALYSIS**

Appellant contends that because he was found mentally incompetent to face criminal charges stemming from his 2006 and 2008 DWI arrests, he was also mentally incompetent to request judicial review of the corresponding license-revocation proceedings. Therefore, he reasons, because the revocations are now being used by the state to enhance a pending DWI prosecution, the revocations violate his due-process rights and should be rescinded.

"We review due-process challenges de novo." *Thole v. Comm'r of Pub. Safety*, 831 N.W.2d 17, 19 (Minn. App. 2013), *review denied* (Minn. July 16, 2013). Questions of state-court jurisdiction are also reviewed de novo. *State v. Barrett*, 694 N.W.2d 783, 785 (Minn. 2005).

A driver may petition for judicial review of a driver's license revocation within 30 days after receipt of a notice and order of revocation. Minn. Stat. § 169A.53, subd. 2(a) (2014). A driver's license represents a limited property right, and therefore revocation proceedings are subject to certain due-process requirements, although these protections are less stringent than the protections afforded to defendants in criminal proceedings. *See Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380, 388 (Minn. App. 1993), *aff'd*, 517 N.W.2d 901 (Minn. 1994). Implied-consent cases, including drivers-license revocations, are civil proceedings. *State v. Dumas*, 587 N.W.2d 299, 303 (Minn. App. 1998), *review denied* (Minn. Feb. 24, 1999); *Davis*, 509 N.W.2d at 392. "In no case does incarceration result from these proceedings." *Dumas*, 587 N.W.2d at 303.

However, a revocation may be used to enhance the penalties for a later DWI conviction. *State v. Wiltgen*, 737 N.W.2d 561, 569 (Minn. 2007). Because of the liberty interests at stake, the use of a license revocation as an aggravating factor is limited "to a situation where judicial review has already occurred or been waived by the failure to file a timely petition." *Id.* at 571.

Appellant makes two different arguments in support of his claim that his due-process rights were violated. First, he argues that, because license revocations may be used to enhance criminal charges, all revocation proceedings must satisfy the due-process protections required in criminal prosecutions. Minnesota courts have rejected this argument. *Nordvick v. Comm'r of Pub. Safety*, 610 N.W.2d 659, 663 (Minn. App. 2000).

Second, appellant argues that the use of the revocations as criminal enhancements violates his due-process rights because he was mentally incompetent during the 30-day periods in which he could timely request judicial review of the revocations. Driver's license revocations are civil proceedings designed to protect public safety, and "the 30-day limitations period will be strictly construed even if a delay in filing is not the driver's fault." *McShane v. Comm'r of Pub. Safety*, 377 N.W.2d 479, 482 (Minn. App. 1985), *review denied* (Minn. Jan. 23, 1986); s*ee State v. Hanson*, 543 N.W.2d 84, 89 (Minn. 1996) (stating that "the primary purpose of the [driver's license revocation] law is to protect the public by removing from Minnesota's streets and highways those who drive under the influence of alcohol"). "A failure to file a petition for judicial review within the 30-day statutory period deprives the district court of jurisdiction to hear the petition." *Thole*, 831

N.W.2d at 19. Appellant does not dispute that he received notice of the proceedings and failed to request judicial review of either revocation within the statutory 30-day periods.

Appellant appears to suggest that because of his mental incompetence at the times he received notice of the revocations, he was not given adequate notice to seek judicial review. Therefore, he argues, enforcing the 30-day jurisdictional bar would violate his due-process rights. Notice is adequate in an implied-consent proceeding where the state provides "[n]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *McShane*, 377 N.W.2d at 482-83 (quotation omitted). "Actual receipt of the notice is not required to meet the due process requirement." *State v. Green*, 351 N.W.2d 42, 44 (Minn. App. 1984). Courts have found notice to be adequate even where the petitioner did not receive actual notice or claimed not to understand the notice. *Id.*; *Johnson v. Comm'r of Pub. Safety*, 394 N.W.2d 867, 868-69 (Minn. App. 1986). So long as notice of the opportunity to seek judicial review of a revocation is "reasonably calculated" to reach the driver, it may satisfy due process even if it never, in fact, reaches that driver. *Green*, 351 N.W.2d at 44.

Appellant does not dispute that he was provided notice, nor does he argue that the commissioner's method or execution of notice for implied-consent proceedings is generally inadequate. Appellant believes that because he was incapable of understanding the notice due to his mental incompetence, he did not receive actual notice of the opportunity for judicial review. However, in a civil implied-consent proceeding, actual notice is not required to satisfy due process. Here, the state provided notice that was

6

reasonably calculated to reach appellant and it did, in fact, reach him. This is sufficient to satisfy due process in the context of the civil implied-consent proceeding.

Because the notice to appellant was sufficient to satisfy due process and appellant did not exercise his right to request judicial review within the 30-day period, the district court did not have jurisdiction to hear the petition. "If the result now seems harsh, it is a criticism that may be levelled against many statutes of limitation. Furthermore, as a matter of public policy D.W.I. laws, including the implied consent statute, are liberally construed in the public's favor and are strictly applied." *Qualley v. Comm'r of Pub. Safety*, 349 N.W.2d 305, 307 (Minn. App. 1984).

Nonetheless, we note that the state's enhancement of criminal charges based on revocations that occurred when a petitioner was mentally incompetent to seek judicial review may constitute a violation of due process. *State v. Warren*, 419 N.W.2d 795, 798 (Minn. 1988) (holding that a defendant may challenge the state's use of a prior misdemeanor conviction as an enhancement where defendant had waived the right to counsel in that earlier proceeding). However, an implied-consent proceeding "is not the proper forum in which to raise" a challenge to the state's use of a revocation as a criminal enhancement. *Davis*, 509 N.W.2d at 389. "Instead, such arguments should be raised at the time a person is charged with" a crime. *Id.* District courts in criminal cases must scrutinize the use of such enhancements. The circumstances in this case may well constitute one of the "unique" cases in which a criminal defendant may collaterally attack a revocation to prevent it from serving as an enhancement. *See State v. Schmidt*, 712 N.W.2d 530, 538 (Minn. 2006) (stating that prior convictions may be collaterally attacked

7

"only in unique cases" (quotation omitted)); *Warren*, 419 N.W.2d at 798 (holding that the violation of a defendant's right to counsel is a "pivotal constitutional right" that may justify a collateral attack on a prior conviction); *State v. Loeffel*, 749 N.W.2d 115, 117 (Minn. App. 2008) (holding that *Schmidt* also controls a defendant's challenge to enhancements based on a civil revocation proceeding), *review denied* (Minn. Aug. 5, 2008). We express no opinion as to the outcome of this analysis, but note that the proper proceeding in which to raise this issue is a pending criminal action.

## D E C I S I O N

The district court did not err by concluding it lacked jurisdiction over appellant's petition for rescission of his past license revocations, despite appellant's claim that he was unable to timely request judicial review due to mental incompetence. However, when the state uses such a revocation to enhance criminal charges, appellant may challenge the use of the revocation in the criminal proceeding.

**Affirmed.**